**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ORLANDO NIGHTCLUB
ENTERPRISES, INC., d/b/a
ROXY NIGHTCLUB,

      Plaintiff,

      vs.                            **Case No: 6:07-cv-1121-Orl-19KRS**

JAMES RIVER INSURANCE COMPANY,

      Defendant.
_____/

**PLAINTIFF'S MOTION AND MEMORANDUM FOR JUDGMENT ON THE**
**PLEADINGS OF DEFENDANT'S COUNTERCLAIM**

Plaintiff, Orlando Nightclub Enterprises, Inc. d/b/a Roxy Nightclub

("ROXY"), through counsel, hereby moves for Judgment on the Pleadings of

James River Insurance Company's ("JRIC") Counterclaim seeking a Declaratory

Judgment that JRIC has no obligation to defend or indemnify ROXY in pending

advertising litigation.  In support of this Motion, ROXY relies on the pleadings and

exhibits thereto, and states as follows:

**I.**     **INTRODUCTION**

ROXY was sued by the makers of Red Bull energy drink for claims

alleging unfair competition and trademark infringement in ROXY's advertising

and operation of an Orlando nightclub.  (Red Bull Complaint, Dkt. 2, Ex. C).[1]

_____

[1] The Red Bull Complaint is an Amended Complaint, which is nearly identical to the
original complaint with the addition of a Count under the Florida Unfair and Deceptive
Trade Practices Act ("FUDTPA").  Note that JRIC misfiled Exhibits A and B to the Red

ROXY timely tendered the Red Bull Complaint to JRIC, its commercial insurer. (Dkt. 2, ¶12; Dkt. 6, ¶12).  JRIC initially denied it had a duty to defend, prompting this action.[2]  (Dkt. 2, ¶12; Dkt. 6, ¶8).  JRIC's Counterclaim in this action seeks a Declaratory Judgment that it does not have a duty to defend or indemnify ROXY, based solely on an exclusion in the relevant policies that purports to exclude claims arising out of the "knowing violation of rights of another."  (Dkt. 6, ¶¶2-6).

As explained below, it is not necessary (or proper) to look outside the pleadings to determine JRIC has a duty to defend its insured and reliance on the knowing violation exclusion is misplaced.  The Red Bull Complaint can be fairly read to <u>not</u> include or depend on allegations of a knowing violation.  Additionally, liability under the asserted claims can be predicated upon a showing of <u>less</u> than knowing or willful conduct.  JRIC's alternative request that the Court make a determination as to the scope of indemnification is premature, and should be dismissed or abated until such time as the underlying suit progresses to a judgment identifying what damages, if any, are recoverable and under what theory.  Accordingly, Judgment on the Pleadings in favor of ROXY is appropriate.

## II.   BACKGROUND

ROXY is a Florida corporation that operates the Roxy Nightclub in Orlando, Florida.   (Red Bull Complaint, ¶5).   ROXY uses the website

---

Bull Complaint as Exhibits A and B to the ROXY Complaint.  The true Exhibit A and B to the ROXY Complaint were filed by JRIC at Dkt. 9.

[2] JRIC has recently agreed to defend ROXY under a reservation of rights, although JRIC has inexplicably not reimbursed the defense costs expended by ROXY prior to JRIC accepting the defense.

www.roxyorlando.com in connection with its nightclub business.   (Red Bull Complaint, ¶26).   JRIC is ROXY's insurer.   (Dkt. 2, ¶¶3, 4, and 6; Dkt. 6, ¶¶3, 4, and 6).   ROXY contracted with JRIC for commercial general liability insurance policies 7534-1 and 7534-2 covering the period from December 15, 2004 to December 15, 2006.   (Dkt. 2, ¶¶6 and 11; Dkt. 6, ¶¶6 and 11; Policies, Dkt. 9, Exhibits A and B).[3]

ROXY was sued by Red Bull North America, Inc. and Red Bull GMBH LLC (collectively "Red Bull") in the United States District Court for the Middle District of Florida for claims of unfair competition, trademark infringement, unjust enrichment and FDUTPA arising under the Lanham Act, Florida statutory law and Florida common law.   (Case No. 6:07-cv-176-ORL-28DAB; Red Bull Complaint, Dkt. 2, Ex. C).   The Red Bull Complaint alleges that ROXY engaged in unauthorized use of the Red Bull trademarks on the ROXY website and "passed off" a substitute energy drink for Red Bull.   (*See e.g.*, Red Bull Complaint, ¶19, 26, 33, 39, and 45).   Under the Red Bull Complaint, ROXY could be found liable for damages if, among other theories, Red Bull proves that patrons were confused as to the source of beverages they purchased at the nightclub based on information they gathered earlier from the website advertising.

ROXY timely tendered the Red Bull Complaint to JRIC.   (Dkt. 2, ¶12; Dkt. 6, ¶12).   In denying it has any duty to defend, JRIC contends:

---

[3] The policies are actually Exhibits A and B to the ROXY Complaint; however, the exhibits to the ROXY Complaint were misfiled by JRIC when removing this case and have been filed at Dkt. 9.

> The operative pleading(s) have alleged entirely intentional conduct not covered by the policy.  Thus, there is no duty to defend or indemnify, and JRIC is entitled to a declaratory judgment to that effect.

(Counterclaim, Dkt. 6, ¶4).   JRIC alternatively contends it does not have an obligation to indemnify ROXY in certain circumstances:

> Alternatively, even if either or both operative pleadings could fairly be read to include both claims for intentional conduct and negligent conduct, JRIC is entitled to a declaratory judgment that it is not responsible for any damages caused by such intentional conduct.

(Counterclaim, Dkt. 6, ¶5).   The policies at issue each contain the following exclusion to coverage for advertising injury liability:

> **a. Knowing Violation Of Rights Of Another**
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

("Exclusion 2(a)," Dkt. 9, Ex. A, p. 6; Dkt. 9, Ex. B, p. 6). JRIC's Declaratory Judgment action is premised solely on Exclusion 2(a).  (Counterclaim, Dkt. 6)

## III.   LEGAL STANDARD

Rule 12(c), Federal Rules of Civil Procedure, provides that after pleadings are closed, any party may move for judgment on the face of the pleadings. Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts.  *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).  If upon review of the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be

4

proved consistent with the allegations of the complaint, dismissal is warranted. *Id.* A motion for judgment on the pleadings is an appropriate vehicle to request dismissal where a party has failed to state a claim upon which relief can be granted or where a party asserts claims over which the court does not enjoy subject matter jurisdiction. Fed. R. Civ. Proc., Rule 12(h)(2) and (3).

## IV.   ARGUMENT

### A.   The Duty To Defend Is Broad

Under Florida law, which governs here, an insurer's duty to defend hinges on whether the allegations of the complaint state a claim which <u>potentially</u> falls within the coverages defined by the policy. *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1335 (S.D. Fla. 2001). This question is resolved "strictly by reference to the allegations of the underlying complaint." *Id.* Therefore, this Court must ask whether the allegations of the Red Bull Complaint "fairly and potentially" state a claim within the coverage provisions of the policy. *Id.* Florida law heavily favors the imposition of a duty to defend. *Id.* at 1336 ("Where there is any doubt as to whether the duty to defend exists in a particular case, this question must be resolved against the insurer and in favor of the insured."). Even if there are multiple reasonable interpretations of the policy language, the interpretation favoring coverage should be adopted. *Auto-Owner's Ins. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit. *Tire Kingdom, Inc. v. First Southern*

*Ins. Co.*, 573 So. 2d 885, 887 (Fla. 3rd DCA 1990) ("[I]t is a clear rule of law that where some allegations set out in a complaint require the insurer to defend the insured, and some allegations do not, the insurer must provide a defense on the entire suit.").

### B.    The Duty To Indemnify Cannot Be Determined On Allegations

The duty to defend is separate and apart from the duty to indemnify and the insurer may be required to defend a suit even if the later true facts show there is no coverage.  *Trizec Properties, Inc. v. Biltmore Construction Co.*, 767 F. 2d 810, 811-812 (11th Cir 1985).  Thus, the duty to defend is much broader than the duty to indemnify.  *Id.*; *Baron Oil Company v. Nationwide Mutual Fire & Insurance Company*, 470 So. 2d 810, 813-14 (Fla. 1st DCA, 1985).  It is well-established law that "the duty to indemnify the insured must be measured at the trial level; this duty is 'not determined by mere allegations but by the facts' in the underlying tort action."  *Penn Millers Ins. Co. v. Ag-Mart Produce*, 2006 U.S. Dist. LEXIS 72693 (M.D. Fla. 2006) (citing *Traveler's Indemnity Co. v. Royal Oak Enterprises, Inc.*, 344 F. Supp. 2d 1358, 1368 (M.D. Fla. 2004).

### C.    Policy Exclusions Are Narrowly Construed

"[E]xclusionary clauses are construed even more strictly against the insurer than coverage clauses."  *Auto-Owner's Ins. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).  Florida courts do not appear to have directly considered "knowing violation" exclusions in the context of claims that do not require intent as an element, but may nevertheless provide for enhanced damages where

willfulness is shown.   In *Adolfo*, the court considered a "knowledge of falsity" exclusion, and found that an insurer had a duty to defend its insured against trade dress infringement claims.  165 F. Supp. 2d at 1341.  The Court reasoned that "where the complaint's allegations leave open the possibility that [the insured] might be liable for unintentional acts of trade dress infringement, it may be said that the complaint contains allegations which 'fairly and potentially bring the case' within the policy coverage, thus requiring the insurer to defend the entire claim."  *Id*.  The Eleventh Circuit also found a duty to defend against Lanham Act claims despite a "knowledge of falsity" exclusion in *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1195 (11th Cir. 2002) (finding the term falsity to be ambiguous).

Another case involving the dissimilar "knowledge of falsity" exclusion is *Vector Products, Inc. v. Hartford Fire Insurance Company*, 397 F. 3d 1316, 1317 (11th Circuit, 2005).  In *Vector*, an insurer denied coverage to Vector based on a policy exclusion for knowledge of falsity or intent to injure.  Vector had been sued in the Northern District of Illinois for claims including false advertising, unfair competition and deceptive trade practices.  *Id*. at 1317.  In that underlying case, an allegation that was incorporated into <u>each</u> count of the Complaint alleged that Vector's <u>false statements</u> were "made . . . willfully and intentionally and with full <u>knowledge of the falsity</u> of such statements."  *Id.* (emphasis added).  The insurer refused to undertake defense of the case claiming that the allegations of willfulness and knowledge of falsity incorporated into each count triggered the

relevant exclusion and relieved it of a duty to defend.  *Id.*  The Eleventh Circuit recognized, "it is well settled that no proof of intent or willfulness is required to establish a violation of Lanham Act Section 43(a) for false advertising."  *Id.* at 1319 (citing *Hyman v. Nationwide Mutual Fire Insurance Company*, 304 F. 3d 1179, 1196, Note 13 (11th Circuit, 2002)).  Moreover, Section 43(a) provides a strict liability tort cause of action.  *Id.*  The Eleventh Circuit reviewed Florida law and found no case directly on point.  The Court found cases in which the cause of action <u>required</u> an allegation of intent to be inapposite, since the intent allegation in a Lanham Act case is superfluous on the issue of liability.  *Id.* at 1320.  Ultimately, the Eleventh Circuit found that none of the cited cases addressed the specific fact pattern in *Vector* where a cause of action was pleaded through each count so that policy exclusions for intent to injure and knowledge of falsity appear to apply, even though the law governing that cause of action makes it a strict liability offense.  *Id.* at 1321.  The Court, therefore, requested the Florida Supreme Court provide a definitive statement on the issue, certifying the question "whether the Lanham Action Section 43(a) claim, as pleaded in the *Schumacher* Complaint, triggers either the intent to injure exclusion or the knowledge of falsity exclusion provided for in the policies."

Unfortunately, for later cases, the *Vector* litigation settled prior to a decision by the Florida Supreme Court and, therefore, the certified question went unanswered.  Accordingly, the general principle under Florida law remains that "if the complaint alleges facts partially within and partially outside the scope of

coverage, the insurer is obligated to defend the entire suit." *Tire Kingdom, Inc. v. First Southern Ins. Co.*, 573 So. 2d 885, 887 (Fla. 3rd DCA 1990).  Moreover, the *Vector* case does not provide much clarity to the issues here, due in part to the differing policy exclusions and allegations of the underlying complaints.  First, having knowledge that a statement is false as in *Vector* is different from knowledge that certain conduct violates another's rights and causes injury as the relevant exclusion here requires.  Second, while there are some allegations of willfulness in the Red Bull Complaint, those allegations are <u>not</u> found in <u>each</u> count, nor is it clear that Red Bull alleges a knowing violation of Red Bull's rights and knowledge of injury as opposed to intentional conduct which Red Bull contends is unlawful.  For instance, there are no allegations that ROXY had "knowledge" that placing a Red Bull logo with a link to the official Red Bull website was violative of Red Bull's rights (if in fact it is), or that ROXY had knowledge the act would cause injury to Red Bull.

Fortunately, recent case law, although outside Florida, has been more instructive on the issues present here.  For example, in *Allied Insurance Company v. Brian M. Bach*, 2007 U.S. Dist. LEXIS 13339 (N.D. Ill. 2007), the court denied an insurer's motion for judgment on the pleadings and granted an insured's motion for summary judgment on the issue of duty to defend.  In *Bach*, the court considered an exclusion, similar to the one at issue in the instant case, that excluded advertising injuries "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would

inflict 'personal and advertising injury.'" *Id.* at *1 - *2.  The underlying litigation in the *Bach* case involved claims of trademark infringement and unfair competition under the Lanham Act and state law, as well as other claims based on copyright infringement, deceptive trade practices, and consumer fraud practices.  *Id.*  The insured brought suit against its insurer seeking to enforce the duty to defend.  *Id.*  The insurer denied coverage because the underlying complaint charged the defendants with willful and intentional conduct.  *Id.* at *2 - *3.  The insurer argued that the underlying complaint "clearly charges defendants with willful intentional violations."  *Id.* at *4.  The court found that if those allegations are the facts there would be no duty to indemnify, however, the Lanham Act provides a cause of action "regardless of intent or knowledge."  *Id.* at *4 (citing 15 U.S.C. Section 1114 (1)(a).  The Court reasoned the issue of willfulness is limited to the issue of damages.  *Id.* at *5.  The Court further found that "a claim for damages based on unfair competition under 15 U.S.C. Section 1125(a) does not require intent for a plaintiff to prevail."  *Id.*  In considering the issue, the Court presented the following rationale:

> Assume that the case goes to trial and the trial court believes that there is no evidence of knowledge or intent on the part of the defendant, based on the pleadings in this case, the Court would **not** direct a verdict since the evidence may very well demonstrate a violation of Section 1114 and/or 1125.

*Id.* (emphasis added).  In other words, a plaintiff could very well prove liability under the Lanham Act without proving knowledge or intent.  The Court, therefore, ordered that the insurer had a duty to defend.  *Id.*

### D.   Each Red Bull Claim Does <u>Not</u> Allege A Knowing Violation

It is not necessary to decide the issue presented in the *Vector* and *Bach* case to find a duty to defend is triggered here.  Setting aside the difference in exclusions at issue here and in the *Vector* case, the Red Bull Complaint does not incorporate an express allegation of a "knowing violation" into each count.  For example, Count III of the Red Bull Complaint seeks damages for unjust enrichment allegedly obtained through infringing activity that included advertising. (Red Bull Complaint, ¶¶45, 69, and 66).  The allegations of Paragraphs 1 through 50 (incorporated by reference) and Paragraphs 64 through 68 do not expressly allege a "knowing violation" or intent.  Accordingly, there are damages claimed by Red Bull that do not allegedly result from a knowing violation within the ambit of Exclusion 2(a).

Similarly, Court IV of the Red Bull Complaint, alleging unfair competition under Florida common law, does not expressly allege a "knowing violation." (Red Bull Complaint, ¶¶ 69-72).  The allegations of Paragraphs 1 through 50 (incorporated by reference) and Paragraphs 70 through 72 do not expressly allege that the purported beverages substitution or use of the Red Bull website link were done with knowledge that the alleged acts would violate the rights of another and cause injury.  While the prayer for relief includes a request for punitive damages, there are no specific allegations of a knowing violation triggering Exclusion 2(a).

### E.   The Red Bull Claims Do Not Require A Showing Of Willfulness

Although additional "covered" claims are unnecessary to establish a duty to defend, a fair reading of the Red Bull Complaint confirms that Red Bull is clearly seeking damages in each count <u>regardless</u> of whether it can show willfulness or not. In Counts I and II, brought under the Lanham Act, ROXY could be found liable regardless of whether knowledge or intent are argued or proven. The Lanham Act and state claims asserted against ROXY are torts that do not require willfulness as an element for liability.  Red Bull's allegations of intent are superfluous to the causes of action in the complaint.   The willfulness of the conduct is only to be examined in connection with damages, <u>after</u> it has been determined whether a violation occurred.  For the same reasoning set forth in the *Bach* case, a duty to defend exists here.  *Bach*, 2007 U.S. District Lexis 13339, *5.

Successful Lanham Act claimants are entitled to compensatory damages regardless of whether the plaintiff proves allegations of intent.  *Vector*, 397 F.3d at 1320; *see also, e.g., Proctor & Gamble Co. v. Chesebrough-Pond's, Inc.*, 747 F.2d 114, 119 (2d Cir. 1984) ("proof of good faith does not immunize a defendant" from a Lanham Act charge).   The intent of ROXY is completely unnecessary to the Red Bull Complaint, and therefore should not determine the duty to defend.  Under JRIC's reasoning, if Red Bull proved every element short of intent, JRIC would have a duty to indemnify ROXY, while never having a duty to defend the lawsuit.  This would have the perverse effect of limiting the duty to

defend to circumstances more narrow than the duty to indemnify, contrary to the law of Florida.  An insurer's duty to defend is distinct from, and broader than, the insurer's duty to indemnify.  *Trizec Properties,* 767 F. 2d at 811-812; *see also SM Brickell Ltd. P'ship v. St. Paul Fire & Marine Ins.* Co., 786 So. 2d 1204, 1206 (Fla. 3rd DCA 2001) (holding that duty to defend existed even though intentional acts were alleged, because a covered cause of action was included).  Red Bull has not pleaded in a manner so as to waive damages absent intent – indeed intent does not appear to have been alleged in at least two counts.  JRIC cannot escape its duty to defend by pointing to a possible scenario in which certain claims are decided in such a manner as to place certain damages within a narrow policy exclusion.

The presumption under Florida law that an insurer is obligated to defend against a complaint that only potentially exposes the insured to damages is in line with the cases nationally. Courts throughout the United States have ruled consistently that allegations of intent do not allow an insurer to avoid its defense obligation based on the intent to injure or knowledge of falsity exclusions. *Central Mut. Ins. Co. v. Stunfence, Inc.*, 292 F. Supp. 2d 1072, 1082 (N.D. Ill. 2003); *Finger Furniture Co., Inc. v. Travelers Indem. Co. of Conn.*, 2002 WL 32113755, at 13 (S.D. Tex. Aug. 19, 2002); *ECKO Group Inc. v. Travelers Indem. Co. of Ill.*, 2000 WL 1752829, 8 (D.N.H. Nov. 29, 2000), rev'd on other grounds, 273 F.3d 409 (1st Cir. 2001); *Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co.*, 61 F. Supp. 2d 611, 619 (S.D. Tex. 1999); *Amerisure Ins. Co. v.*

13

*Laserage Tech. Corp.*, 2 F. Supp. 2d 296, 304 (W.D.N.Y. 1998); *Elcom Techs., Inc. v. Hartford Ins. Co. of the Midwest*, 991 F. Supp. 1294, 1298 (D. Utah 1997); *Union Ins. Co. v. Knife Co., Inc.*, 897 F. Supp. 1213, 1217 (W.D. Ark. 1995); *Cosser v. One Beacon Ins. Group*, 789 N.Y.S.2d 586, 587 (N.Y. App. Div. 2005); *PG Ins. Co. of New York v. S.A. Day Mfg. Co., Inc.*, 674 N.Y.S.2d 199, 200 (N.Y. App. Div. 1998).

**F.    Declaratory Action Concerning Indemnification Is Premature**

JRIC's Counterclaim also contains an alternative request for a declaratory judgment that JRIC is not responsible for any damages caused by intentional conduct.  (Counterclaim, Dkt. 6, ¶5).  At this time, however, it is unknown what Red Bull will argue at trial, what questions will be submitted to the jury, what jury instructions will be charged, and what findings will be made.  It is possible that the case may never reach the question of damages.  It is simply too early to discuss what damages JRIC may or may not be responsible for, prior to adjudication of the underlying matter.  The Court should therefore abate or dismiss the JRIC's alternative request for Declaratory pending resolution of the underlying Red Bull litigation.

This was the approach taken by the Court in *Penn Miller Insurance Company v. AG-MART Produce, Inc.*, 2006 U.S. Dist. LEXIS 72693, *7(M.D. Fla. 2006).  In *Penn*, an insurer sought a declaratory judgment to determine whether or not it would be obligated to indemnify its insured for punitive damages should its insured be found liable in an underlying action.  *Id.* at *2.  The insured moved

14

to dismiss or abate the declaratory action arguing that it was premature. *Id.* The Court found that while district courts have broad discretion to declare the rights of interested parties in a declaratory judgment action; the duty to indemnify an insured should be made at the trial level, determined by the facts and not mere allegations. *Id.* at *3. The Court cited several factors in support of dismissal. *Id.* at *5. First the Court found that the question of punitive damages indemnification would not settle any controversy since a judgment in the underlying case would still be necessary to fully resolve the indemnification issue. *Id.* Second, the Court found that the declaratory action would not serve a useful purpose in terms of clarifying the legal relations at issue, reasoning that clarification can only be had upon resolution of the underlying proceeding. *Id.* Third, the Court found that overlapping factual issues were important to resolving the indemnity question. *Id.* Finally, the Court found that the trial court in the underlying matter was better suited to evaluate the factual issues. *Id.* at *6. The Court reasoned that to decide the issue of punitive damages and indemnification, it would have to "sit through a full trial to discover all the facts that are based on the same evidence, arguments, and testimony" being presented in the underlying action. *Id.* The Court noted that this would not "exactly bode well for 'judicial economy.'" *Id.* The Court concluded that deciding whether or not the insurer has a duty to indemnify its insured for punitive damages in an underlying action is "a kin to putting the judicial cart before the horse." *Id.* at *7.

Likewise, in the instant matter, resolution of the indemnity question raised by JRIC necessarily requires prior resolution of facts currently being litigation in the underlying Red Bull litigation.   A declaratory action on the issue of indemnification will create a real and substantial likelihood of inefficient and needless litigation, with all of the ever-present risk of inconsistent factual findings, duplicative and expensive depositions and discovery efforts, and unnecessary judicial administration.  This is not a case where there is some narrow coverage issue severable from the merits such as the effective date of cancellation or based upon a material misrepresentation on the application. Rather this coverage litigation involves a full-scale exploration of the conduct of the litigants and the nature of the damages.

JRIC seek what amounts to an advisory opinion that has many potential iterations based on the possible judgments in the underlying Red Bull litigation.  It is unknown at this time whether any damages will be awarded at all, much less whether and how the issue of intent will be resolved.  What if ROXY is found to have acted without intent while the individual co-defendant in the underlying litigation, also an insured under the same policies, is found to have acted intentionally?  What if the jury instructions on intent (if any) do not neatly track the language of the exclusion requiring "knowing violation of rights of another?"  *See e.g.*, *Hyman*, 304 F. 3d 1179, 1196 (finding jury determination that insured acted "willfully" did not invoke knowledge of falsity exclusion because the wording of the jury instruction did not necessarily correspond to a finding that the insured

knew the statement or advertisements at issue were "false.").   There is also no real and practical benefit to JRIC in litigating the indemnification issue aside from allowing a form of procedural fencing or leveraging by the insurer.   If the coverage action cannot, realistically speaking, be resolved before the underlying matter, and if the insurer would otherwise have the right to litigation indemnity issues after a settlement or verdict in the underlying litigation, there is no practical or immediate benefit of filing and litigating this declaratory action.   The only perceived advantage is strategic.   The burden on ROXY however is great, requiring the insured to undergo additional and duplicative litigation.

## V.      CONCLUSION

The "knowing violation" exclusion does not excuse JRIC's breach of its duty to defend ROXY against the claims asserted by Red Bull.   The Red Bull Complaint "fairly and potentially" states a claim within the coverage provisions of the policy. At least two counts do <u>not</u> include or depend on allegations of a knowing violation. Moreover, a fair reading of the Red Bull Complaint confirms that Red Bull is seeking damages in each count regardless of intent, which is not a required element.   Accordingly, judgment on the pleadings that JRIC has a duty to defend ROXY is appropriate.   JRIC's alternative request that the Court gauge the scope of potential indemnification is premature, and should be dismissed or abated until such time as the underlying Red Bull litigation is resolved.

Dated:  August 1, 2007

*s/Jeffrey S. Boyles*
BRIAN R. GILCHRIST
Florida Bar No. 774065
bgilchrist@addmg.com
JEFFREY S. BOYLES
Florida Bar No. 722308
jboyles@addmg.com
ALLEN, DYER, DOPPELT,
   MILBRATH & GILCHRIST, P.A.
255 South Orange Ave., Suite 1401
Orlando, FL  32801
Telephone:   407/841-2330
Facsimile:    407/841-2343
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2007, I presented the foregoing to the Clerk of the Court for filing and uploading to the Case Management/Electronic Case Filing ("CM/ECF") system which will send a Notice of Electronic Filing to the following CM/ECF participants:

Harold R. Mardenborough, Jr., Esq.
Carr, Allison Law Firm
305 South Gadsden Street
Tallahassee, FL 32301

Attorneys for Defendant

*s/Jeffrey S. Boyles*
Jeffrey S. Boyles