UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ORLANDO NIGHTCLUB ENTERPRISES, INC., d/b/a Roxy Nightclub,**

**Plaintiff,**

**-vs-** **Case No. 6:07-cv-1121-Orl-19KRS**

**JAMES RIVER INSURANCE COMPANY,**

**Defendant.**

---

# ORDER

This case comes before the Court on the following:

1. Motion and Memorandum for Judgment on the Pleadings of Defendant James River Insurance Company's Counterclaim filed by Plaintiff Orlando Nightclub Enterprises, Inc. (Doc. No. 12, filed Aug. 1, 2007); and

2. Response of Defendant James River Insurance Company to Plaintiff Orlando Nightclub Enterprises, Inc.'s Motion and Memorandum for Judgment on the Pleadings in Favor of Defendant's Counterclaim and Motion and Memorandum for Judgment on the Pleadings in favor of Defendant's Counterclaim (Doc. No. 15, filed Aug. 15, 2007).[1]

---

[1] In Defendant's response to Plaintiff's Motion and Memorandum for Judgment on the Pleadings, Defendant moved the court for affirmative relief. (Doc. No. 15.) Plaintiff subsequently filed a motion with the Court to strike from Defendant's response any request for affirmative relief contained within its responsive pleading. (Doc. No. 16, filed August 17, 2007). The Court granted Plaintiff's motion in accordance with the Rules of this District. (Doc. No. 17, filed August 20, (continued...)

## Background

This case involves a dispute over the duty of Defendant James River Insurance Company ("JRIC") to defend and indemnify its insured, Plaintiff Orlando Nightclub Enterprises, Inc., d/b/a Roxy Nightclub ("Roxy").

Roxy is a Florida corporation that owns and operates the Roxy Nightclub located in Orlando, Florida. (Doc. No. 12, at p. 2.) Roxy was sued by Red Bull North America, Inc. and Red Bull GMBH LLC (collectively "Red Bull") for repeatedly selling a product called "Rockstar" to its customers when customers specifically requested RED BULL®, a name brand energy beverage many people drink with vodka. (Doc. No. 15, at p. 1.) Red Bull's Amended Complaint alleges five counts against Roxy: (1) unfair competition in violation of Section 43(a) of the Lanham Act; (2) trademark infringement in violation of Section 32(1) of the Lanham Act; (3) unjust enrichment in violation of Florida common law; (4) unfair competition in violation of Florida common law; and (5) a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"). (Doc. No. 27, filed May 30, 2007).

### I. The Red Bull Complaint

The section entitled "Allegations Common to all Claims for Relief" in Red Bull's Amended Complaint contains forty-four allegations. In thirty-two of those allegations Red Bull claims that a private investigator entered the Roxy Nightclub, ordered a RED BULL® mixed with Stoli and observed one of Roxy's bartenders make the drink with Rockstar instead of RED BULL® while failing to inform the investigator of the substitution. (Doc. No. 27, at pp. 14-19.) Only once was

---

[1](...continued)
2007). Subsequently Defendant did not file a motion for judgment on the pleadings in favor of Defendant's Counterclaim. Therefore, the Court solely addresses Plaintiff's Motion in this Order.

a private investigator informed that his drink was made with Rockstar and not RED BULL® after he asked the bartender whether his drink contained RED BULL®. (*Id*. at p. 6, ¶ 19.)

In addition, the common allegations section of Red Bull's Amended Complaint contains two allegations claiming that written warning was sent to Roxy notifying it of the illegal "passing off" that was taking place at the nightclub. (*Id*. at pp. 6, 8, ¶¶ 18, 25.) The first warning reminded Roxy that its employees had a duty to inform RED BULL® customers when an alternative product is served. (*Id*. at p. 6, ¶ 18.) The warning also informed Roxy that Red Bull had documentation showing customers were served Rockstar when they specifically ordered RED BULL® and that Red Bull would continue to monitor the situation to ensure that corrective action was taken. (*Id*.) After the situation failed to improve, Red Bull's legal counsel sent Roxy a second written warning which notified Roxy "that the practice of falsely designating the origin of goods, or passing off, is illegal under both federal and state law and carries severe legal consequences." (*Id*. at p. 8, ¶ 25.) Red Bull instructed Roxy to inform its customers that it does not sell RED BULL® and to have its customers approve a substitution before serving something else. (*Id*.)

The common allegations section also contains four allegations in which Red Bull claims that a private investigator viewed Roxy's website and observed that it contained a link in the form of the RED BULL® icon which connected to Red Bull's official website when the internet user clicked on the icon. (*Id*. at pp. 8-13, ¶¶ 26, 33, 39, 45.)

These general allegations are realleged and incorporated by reference throughout each of the five individual counts in Red Bull's Amended Complaint. (*Id*. at pp. 14-19, ¶¶ 51, 58, 64, 69, 73.)

## II. The Insurance Policy

Roxy contracted with Defendant JRIC for two commercial general liability insurance policies covering the period from December 15, 2004 to December 15, 2006. (Doc. No. 9-2, No. 9-4, filed July 23, 2007.) Coverage B in Section 1 of the policies provides that JRIC will indemnify Roxy for any damage Roxy becomes legally obligated to pay as a result of "personal and advertising injury" to which the insurance applies. (Doc. No. 9-2, at p. 11.), (Doc. No. 9-4, at p. 10.) The policies further provide that JRIC will "have the right and duty to defend against any suit seeking those damages" but will have "no duty to defend against any suit seeking" damages for "personal and advertising injury" to which the insurance does not apply.[2] (*Id*.)

The policies exclude coverage for, among other things, "personal and advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury" (hereinafter referred to as "Exclusion 2(a)").[3] (*Id*. at p. 12.), (*Id*. at p. 11.)

---

[2] The policies provide in pertinent part:

> COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal or advertising injury" to which this insurance does not apply.

[3] The policies provide in pertinent part:

> 2. Exclusions
>    This insurance does not apply to:
>    a. Knowing Violation of Rights of Another
>       "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would

(continued...)

After receiving Red Bull's original Complaint, Roxy submitted the Complaint to JRIC seeking a defense under the policies' liability coverage sections. (Doc. No. 12, at p. 3.) Based on Exclusion 2(a), JRIC refused to defend Roxy in the Red Bull action, claiming that Roxy's actions were intentional and excluded under the policies. (Doc. No. 6, filed July 12, 2007 at p. 2.) Upon receipt of Red Bull's Amended Complaint, JRIC agreed to defend Roxy under a reservation of rights. (Doc. No. 15, at p. 4.)

**III. Procedural History**

In response to JRIC's refusal to defend, Roxy brought the present action in Florida state court, alleging breach of contract and seeking a declaratory judgment that Roxy is owed a defense for the claims asserted against it by Red Bull. (Doc. No. 2, filed July 3, 2007 at p. 1). JRIC subsequently removed the action to federal court and filed a counterclaim against Roxy seeking a declaratory judgment that JRIC has no obligation to provide a defense or to indemnify Roxy because Red Bull's Amended Complaint alleges intentional conduct which triggers Exclusion 2(a). (Doc. No. 6, at p. 2-3.) Roxy has filed a motion for judgment on the pleadings on JRIC's Counterclaim seeking a determination of JRIC's obligations to defend and indemnify. (Doc. No. 12.)

---

[3](...continued)

> violate the rights of another and would inflict "personal and advertising injury".
>
> 14. "Personal and advertising injury" means injury...arising out of one or more of the following offenses:
>     d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>     f. The use of another's advertising idea in your "advertisement"; or
>     g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**Standard of Review**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999). "When reviewing judgment on the pleadings, we must take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id*. "If upon reviewing the pleadings it is clear that the [moving party] would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

**Discussion**

**I. Standard of Analysis**

This case is before the Court based on diversity jurisdiction. (Doc. No. 1, filed July 3, 2007). In a diversity action, the federal court must apply the substantive law of the forum state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001). Because the parties have agreed that Florida law governs the instant dispute, the Court will apply Florida law to interpret the contract without conducting its own choice of law analysis. *See Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1407 (11th Cir. 1998); *Horowitch v. Diamond Aircraft Indus., Inc.*, No. 6:06-cv-1703, 2007 U.S. Dist. LEXIS 68453, *9-10 (M.D. Fla. Sept. 17, 2007).

In Florida insurance contracts are to be construed in accordance with the plain language of the policies. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Any ambiguities

will be interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. *Id*. If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, an ambiguity is deemed to exist, and the court is bound to adopt the interpretation that favors coverage. *Id*. Florida law is equally well settled that coverage clauses are to be construed in the broadest possible manner to effect the greatest extent of coverage while exclusions are construed in the narrowest possible manner. *Id*.

## II. Duty to Defend

"An insurer's duty to defend is distinct from and broader than the duty to indemnify." *Lime Tree Vill. Cmty. Club Ass'n Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813-14 (Fla. 1st DCA 1985)). Under Florida law, an insurer's duty to defend "is determined by examining the allegations in the complaint filed against the insured." *Id*. (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors Inc.*, 358 So. 2d 533, 536 (Fla. 1978)). "The insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage." *Id*. (citing *Trizec Properties Inc. v. Biltmore Const. Co.*, 767 F.2d 810, 811-12 (11th Cir. 1985)); *Adolfo House Dist. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1335 (S.D. Fla. 2001). "If the underlying complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." *Lime Tree*, 980 F.2d at 1405 (quoting *Baron Oil Co.*, 470 So. 2d at 813-14). "If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured." *Id*. (citing *Trizec Properties*, 767 F.2d at 812); *Baron Oil Co.*, 470 So. 2d at 814.

### A. The Parties' Arguments

JRIC argues that Red Bull's Amended Complaint alleges "intentional" and "knowing" conduct on behalf of Roxy which triggers Exclusion 2(a) and eliminates JRIC's obligation to defend Roxy in the underlying Red Bull litigation. (Doc. No. 15, at p. 12.) JRIC contends that the common allegations in the Red Bull Complaint, which are incorporated by reference into each of the five counts against Roxy, allege "more than sufficient intentional conduct to trigger the exclusion." (*Id*.) In addition, JRIC contends that each of the five counts in the Red Bull Amended Complaint allege additional conduct that activates the exclusion. (*Id*.)

In response, Roxy argues that JRIC is obligated to provide Roxy with a defense to the underlying Red Bull action. (Doc. No. 12, at p. 2.) Roxy first argues that Red Bull's Amended Complaint can be fairly read "to not include or depend on allegations of a knowing violation" that would trigger Exclusion 2(a). (*Id*.) Further, Roxy contends that JRIC must defend because Roxy could be found liable under at least one of the asserted Red Bull claims without Red Bull ever having to prove Roxy acted with knowledge or intent. (*Id*.)

Generally speaking, the parties disagree over whether the elements of the specific claims pled in the underlying complaint control over the insured's conduct alleged in the complaint. For example, regardless of whether Roxy's alleged conduct falls squarely within Exclusion 2(a) of JRIC's policy, Roxy argues it is entitled to a defense because Red Bull could recover on at least one claim without proving intent or knowledge. (*Id*. at pp. 12-14.) In turn, this liability would give rise to JRIC's duty to indemnify, which Roxy argues cannot exist without the duty to defend. (*Id*.) However, assuming that Roxy's conduct does fall squarely within Exclusion 2(a) <u>and</u> the factual allegations control over the substance of the causes of actions pled, JRIC argues there would be no

duty to defend because Red Bull's Amended Complaint alleges Roxy knowingly violated Red Bull's rights and caused Red Bull "personal and advertising injury." (Doc. No. 15, at pp. 12-13.)

**B. Allegations of Intentional Conduct**

As stated above, it is basic law that an insurer must defend its insured when the complaint against the insured "alleges facts which fairly and potentially bring the suit within policy coverage." *Lime Tree*, 980 F.2d at 1405 (citing *Trizec Properties* 767 F.2d at 811-12); *Adolfo House*, 165 F. Supp. 2d at 1335. Even though the complaint may allege facts showing only one ground for liability within coverage, the insurer must defend the entire suit until the claim that creates the potential for coverage under the policy is dismissed or removed from the action. *See Lime Tree*, 980 F.2d at 1405; *Adolfo House Dist. Corp.*, 165 F. Supp. 2d at 1336; *Baron Oil*, 470 So. 2d at 815.

In the instant case, however, this basic principle of law is complicated by competing standards of review. The standard of review for judgment on the pleadings requires the Court to view the facts, including the insurance contract and the allegations in Red Bull's Amended Complaint, in the light most favorable to JRIC. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999). It is equally well established under Florida law that insurance exclusion clauses are construed strictly against the insurer. *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). The parties have not produced case law to guide the Court on how to resolve these two standards of review when they conflict with one another.

On closer scrutiny JRIC's argument that the factual allegations pled in Red Bull's Amended Complaint on its face trigger Exclusion 2(a) for all claims against Roxy is debatable. The allegations amount, at best, to circumstantial evidence that Roxy's actions were intentional. Viewed in favor of JRIC, as the judgment on the pleadings standard requires, these allegations could be

construed as intentional, and judgment on the pleadings would be inappropriate because a question of fact would remain as to whether Exclusion 2(a) applies. However, if the policy exclusion is construed narrowly, as Florida law requires, the allegations of intent in the Red Bull complaint should be viewed as insufficient to trigger Exclusion 2(a).

Nevertheless, it is unnecessary for the Court to resolve the conflict posed by these competing standards of review. Even assuming that the allegations in the Red Bull Complaint are intentional within the meaning of Exclusion 2(a), JRIC is required to defend Roxy because Red Bull can prevail in the underlying litigation without proving intent.

### C. The Duty to Defend when Claims Against the Insured do not Require Proof of Intent

#### *i. Florida Law Regarding the Duty to Defend*

Federal courts are "bound to decide [a diversity] case in the way it appears the state's highest court would." *Royal Ins. Co. of Am.*, 242 F.3d at 1040 (quoting *Towne Realty, Inc. v. Safeco Ins. Co.*, 845 F.2d 1264, 1269 n.5 (11th Cir. 1998)). When there is no state supreme court case directly on point, a federal court is bound by the intermediate appellate court decisions of that state. *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 903 F.2d 1398, 1399 (11th Cir. 1990).

Florida law is not firmly established with regard to the instant issue. Florida courts have concluded that when a cause of action alleged is one for intentional acts, the insurer has no duty to defend if the subject policy does not provide coverage for intentional misconduct. *See, e.g., Nat'l Union Fire Ins. Co. v. Lenox Liquors*, 358 So. 2d 533, 536 (Fla. 1978) (Insurer had no duty to defend when the only cause of action alleged in the complaint was one for intentional acts and the insurance policy did not provide coverage for bodily injury that was intentionally inflicted by the insured); *State Farm Fire and Cas. Co. v. Edgecumbe*, 471 So. 2d 209, 210 (Fla. 1st DCA 1985)

(Insurer had no duty to defend when the complaint against the insured alleged that she intended to injure a third party and the policy excluded coverage for damage that arose from an incident that was expected or intended); *Capoferri v. Allstate Ins. Co.*, 322 So. 2d 625, 627 (Fla. 3d DCA 1975) (Where the only cause of action alleged in the complaint was one for an intentional act by the insured, the insurer had no duty to defend because intentional acts were not within the policy's coverage). However, Florida courts have not answered the question presented here, whether there is a duty to defend when the underlying complaint contains factual allegations of knowing, willful, and intentional acts but the causes of action alleged are not ones for intentional harms and can be proven without regard to knowledge or intent. This scenario often arises in the context of Lanham Act claims where plaintiffs plead intentional conduct in order to obtain treble damages, but the plaintiff is not required to prove intentional conduct in order to recover actual damages. *See, e.g., Vector Products, Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316 (11th Cir. 2005).

The Eleventh Circuit was presented with this issue in *Vector Products, Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316 (11th Cir. 2005). In that case, Vector brought an action against Hartford, its liability insurer, alleging Hartford was required to defend it in an underlying action for false advertising under Section 43(a) of the Lanham Act as well as state unfair competition and deceptive trade practices law. *Id.* at 1317. Hartford refused to defend Vector on the basis that the underlying complaint contained an allegation incorporated into each count of the complaint asserting that Vector made false statements "willfully and intentionally and with full knowledge of falsity," thereby triggering the "knowledge of falsity" exclusion and relieving Hartford of its duty to defend.[4]

---

4 A similar "knowledge of falsity" exclusion is contained in JRIC's policies with Roxy. (Doc. No. 9-2, p. 12.) (Doc. No. 9-4, p. 11.) However, JRIC does not contend that Roxy's conduct triggers (continued...)

*Id*. at 1318. The exclusion provided that Hartford would have no duty to defend against suits when the insured knew that certain advertising information was false and the insured intended to cause injury. *Id*. The district court granted summary judgment in favor of Hartford after applying the Florida Third District Court of Appeal's reasoning in *SM Bricknell Ltd. Partnership v. St. Paul Fire and Marine Ins. Co.*, 786 So. 2d 1204 (Fla. 3d DCA 2001).

Vector appealed, contending that Hartford still had a duty to defend despite the allegations of willfulness and knowledge of falsity contained in the underlying complaint. *Id*. Vector argued that it could be held liable for a false advertising Lanham Act violation without the plaintiff in the underlying case having to establish that Vector acted intentionally or with knowledge of falsity. *Id*. at 1319. Hartford argued that the court should look solely to the allegations in the underlying complaint against Vector and not to the substance of the causes of action pled. *Id*. Hartford urged the court to find that there was no duty to defend because an allegation of willfulness or knowledge of falsity were included in each count. *Id*. at 1319-20.

The Eleventh Circuit began by stating, "It is well-settled that no proof of intent or willfulness is required to establish a violation of Lanham Act Section 43(a) for false advertising. Rather, Section 43(a) provides a strict liability tort cause of action." *Id*. at 1319. Recognizing there was no Florida case directly on point, the Court looked to relevant Florida law for guidance. *Id*. at 1320.

First, the Eleventh Circuit addressed *National Union Fire Ins. Co. v. Lenox Liquors,* 358 So. 2d 533 (Fla. 1977), which held that a complaint filed against the insured by a minor who was shot by the president of the insured did not allege facts which would bring the case within policy

[4](...continued)
this exclusion.

coverage. *Vector,* 397 F.3d at 1320 (citing *Lenox Liquors*, 358 So. 2d at 533). The insurer refused to defend the insured, a liquor store, because the underlying complaint only alleged claims sounding in intentional tort. *Id*. The parties later reached a settlement in which they stipulated that if the case had gone to trial, it would have been tried on a negligence theory rather than as an intentional tort case. *Id*. (citing *Lenox Liquors*, 358 So. 2d at 534). The Florida Supreme Court stated that a duty to defend only arises "where the complaint alleges a state of facts within the coverage of the insurance policy." *Id*. (citing *Lenox Liquors,* 358 So. 2d at 535). The cause of action pled in *Lenox Liquors* required proof of intent in order for the insured to be held liable. Distinguishing *Lenox Liquors* from *Vector,* the Eleventh Circuit acknowledged that the intent allegation in *Vector* "was superfluous to the issue of liability." *Id*.

Next, the Eleventh Circuit addressed *SM Bricknell Ltd. Partnership v. St. Paul Fire and Marine Ins. Co*, 786 So. 2d 1204 (Fla. 3d DCA 2001), in which the trial court held that the facts alleged in the underlying complaint triggered a knowledge of falsity exclusion. *Vector,* 397 F.3d at 1320 (citing *SM Bricknell*, 786 So. 2d at 1206). However, the Third District Court of Appeal found that once the complaint had been amended to add a claim for negligent defamation, the insurer owed a duty to defend because the cause of action potentially fell within policy coverage. *Id*.

The Eleventh Circuit then analyzed *Lime Tree Vill. Cmty. Club Ass'n Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402 (11th Cir. 1993). *Vector*, 397 F.3d at 1320-21. In *Lime Tree,* the Court considered whether the duty to defend arises when an insured is sued for claims of discrimination, restraint of trade, slander or disparagement of title to property rights, and breach of Covenants and Restrictions. *Id*. (citing *Lime Tree*, 980 F.2d at 1404). The insurer refused to defend on the ground that the insured's actions were intentional and therefore excluded under the policy. *Id*. (citing *Lime*

*Tree*, 980 F.2d at 1404). Citing *Baron Oil*, the Eleventh Circuit stated, "The duty to defend turns on the grounds for liability expressed by allegations in the underlying complaint." *Lime Tree*, 980 F.2d at 1405. Applying that standard, the Court found that based on allegations in the underlying complaints, the insured could be found liable on claims for which the underlying plaintiff did not need to prove intent to prevail. *Id*. at 1405-06. For example, "Lime Tree could be held liable for unintended slander or title and unintended restraint of trade." *Id*. Furthermore, even assuming the insured's actions were intentional, the Court noted that the complaints did not state that the insured intended to cause the underlying plaintiff's harm. *Id*. at 1407. Therefore, the insurer had a duty to defend the suits. *Id*.

Despite examining several Florida cases, the Eleventh Circuit failed to reach a decision on whether there was a duty to defend in *Vector* because none of the cases addressed a scenario in which "a cause of action was [pled] so that policy exclusions for intent to injure and knowledge of falsity [appeared] to apply, even though the law governing that cause of action [made] it a strict liability offense." *Vector*, 397 F.3d at 1321. Therefore, the Court certified the following question to the Florida Supreme Court:

> Whether the Lanham Act § 43(a) claim, as pleaded in the Schumacher complaint, triggers either the intent to injure exclusion or the knowledge of falsity exclusion provided for in the Policies.

*Id*. However, *Vector* was settled before the Florida Supreme Court answered the certified question, *Vector Prods. v. Hartford Fire Ins. Co.*, 933 So. 2d 1154 (Fla. 2006), leaving Florida law on this issue unsettled.

### *ii. Law Regarding the Duty to Defend in Other Jurisdictions*

In the absence of Florida state court precedent, the Court looks to decisions from other jurisdictions. *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004). Many federal and state courts from other jurisdictions have considered the question whether allegations of knowledge of falsity, a knowing violation, or an intent to injure in a strict liability cause of action relieve an insurer from its duty to defend. A majority of these jurisdictions have found that the duty to defend survives such allegations of intentional conduct.[5]

---

5

*See Cent. Mut. Ins. Co. v. Stunfence, Inc.*, 292 F. Supp. 2d 1072, 1081-82 (N.D. Ill. 2003) (Intentional and willful conduct on the part of the insured need not be proved to recover under either 15 U.S.C. § 114(1)(a) or §1125(a); therefore the exclusions for knowing violation and intent to injure as well as knowledge of falsity do not apply to negate an insurer's duty to defend); *Finger Furniture Co. v. Travelers Indem. Co. of Conn.*, No. H-01-2797, 2002 WL 32113755, at *13 (S.D. Tex. Aug. 19, 2002) (Because a party can be held liable under the Lanham Act without regard to intent, the knowledge of falsity exclusion does not bar the insurer from its duty to defend); *ECKO Group Inc. v. Travelers Indem. Co. of Ill.*, 2000 WL 1752829, at *8 (D. N.H. Nov. 29, 2000) (Since knowledge of falsity is not a requirement for a trade dress infringement claim in violation of the Lanham Act and liability may arise from negligent or reckless conduct, the exclusion does not apply to preclude a duty to defend), *rev'd on other grounds*, 273 F.2d 409 (1st Cir. 2001); *Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co.*, 61 F. Supp. 2d 611, 619 (S.D. Tex. 1999) (Knowledge of falsity exclusion does not apply to bar coverage because knowledge is not a requirement for a finding of liability under the Lanham Act); *Amerisure Ins. Co. v. Laserage Tech. Corp.*, 2 F. Supp. 2d 296, 304 (W.D. N.Y. 1998) (Knowledge of falsity exclusion does not apply to allegations of a Lanham Act violation because liability can be found without regard to intent); *Elcom Techs., Inc. v. Hartford Ins. Co. of the Midwest*, 991 F. Supp. 1294, 1298 (D. Utah 1997) (Knowledge of falsity does not apply to false advertising claim because claim can be established by proof that insured acted with reckless indifference in advertising); *Union Ins. Co. v. Knife Co., Inc.*, 897 F. Supp. 1213, 1217 (W.D. Ark. 1995) (An insurer must defend its insured despite allegations of willfulness because intent is not an element of trademark infringement); *Cosser v. One Beacon Ins. Group*, 789 N.Y.S.2d 586, 587 (N.Y. App. Div. 2005) (Because an insured could be held liable pursuant to the Lanham Act without a showing of intentional or knowing conduct on their part, an insurer has an obligation to defend; intentional and knowing conduct is relevant on the issue of damages only) (quotation and citations omitted). *But see Atl. Mut. Ins. Co. v. Terk Technologies Corp.*, 763 N.Y.S.2d 56, 63 (N.Y. App. Div. 2003) (Insurer does not have a duty to defend its insured, despite the fact that a violation of the Lanham Act can be unintentional, if all the factual allegations of the complaint are premised on intentional, knowing conduct that fall squarely within the knowledge of (continued...)

The Northern District of Illinois adopted the majority position in *Allied Ins. Co. v. Bach*, reasoning that "[t]he issue of willfulness is limited to the issue of damages." No. 05 C 5945, 2007 WL 627635, at *2 (N.D. Ill. Feb. 27, 2007). In *Bach*, the insured was sued for marketing counterfeit golf balls, and the complaint included, among other assertions, claims for federal trademark infringement, Illinois unfair competition, Illinois deceptive trade practice violation, and copyright infringement. *Id*. at *1. Allied, the insurer, filed suit seeking a declaratory judgment that it had no duty to defend Bach based on a policy exclusion for willful or knowing acts committed by the insured. *Id*. The Court held that if the facts alleged in the underlying complaint against Bach were proven, then Allied would have no duty to indemnify Bach. However, since a claim for copyright infringement and unfair competition under the Lanham Act provides a cause of action regardless of intent or knowledge Allied had a duty to defend Bach in the underlying litigation. *Id*. at *2. In reaching its conclusion, the Court reasoned:

> Assume that the case goes to trial and the trial court believes that there is no evidence of knowledge or intent on the part of the defendant[.] [B]ased on the pleadings in this case[,] the court would not direct a verdict since the evidence may very well demonstrate a violation of Sections 1114 and/or 1125.

*Id*.

In contrast, the Court in *Dairy Source, Inc. v. Biery Cheese Co.*, 674 N.W.2d 680 (Wis. Ct. App. 2003), was not persuaded by the insured's argument that the elements of the claims should control over the specific conduct alleged in the complaint. The policy in *Biery Cheese* contained a "knowing injury" exclusion similar to the one in the instant case. *Id*. at *2. The insured was sued

---

[5](...continued)
falsity exclusion); *A.J. Sheepskin & Leather Co., Inc. v. Colonia Ins. Co.*, 709 N.Y.S.2d 82 (N.Y. App. Div. 2000) (same).

for, among other things, misappropriation of trade secrets and trademark/trade dress infringement. *Id*. The insured argued that the knowing injury exclusion did not preclude coverage because those claims did not require proof that the insured intended to violate the rights of the plaintiff or to injure the plaintiff. *Id*. at *5. Because there existed a possibility that the insured could be found liable under the complaint even with no intentional act, "the allegations of the Complaint arguably bring the case within Policy coverage." *Id*. In response the Court stated, "[t]he fact that liability for the claims asserted in this complaint might be established without proving conduct that would come within the knowing injury exclusion does not alter the fact that the conduct establishing liability alleged *in this complaint* indisputably comes within the exclusion." *Id*. However, "if [a] complaint could arguably be read to suggest that [the insured] did not do the acts alleged with knowledge that they would violate [another's] rights and inflict a personal and advertising injury, then [the insured] might have liability for conduct that would not come within the exclusion." *Id*.

***iii. JRIC's Duty to Defend***

The Court finds that the analysis of the Northern District of Illinois in the *Bach* case is persuasive as well as more consistent with Florida law and longstanding insurance-law principles. Accordingly, the Court concludes that JRIC has a duty to defend Roxy in the underlying Red Bull litigation.

Under Florida law, the duty to indemnify is encompassed within the duty to defend. *Allstate Ins. Co. v. RJT Enters., Inc.*, 692 So. 2d 142, 144 (Fla. 1977) ("The duty to defend is broader than the duty to pay.") When the elements necessary to sustain a claim, if proven, would result in damages that are covered under the policy, then there is the potential that the cause of action could

result in an award of damages for which there is insurance coverage. This potential for indemnity compels a duty to defend.

There cannot be a duty to indemnify without a duty to defend. The approach taken by the Wisconsin Court of Appeals in *Biery Cheese* provides the possibility that an insurer would have to indemnify its insured for covered damages without the insurer ever having to provide a defense to its insured. This standard produces a result which is inconsistent and contrary to the fundamental premise of Florida law that the duty to defend is broader than the duty to indemnify. If this Court were to hold that the duty to defend is determined strictly by allegations that are unnecessary to a finding of liability, then it would have to ignore the actual causes of actions alleged, the elements necessary to sustain those causes of action, and the potential outcomes of a trial based on those alleged claims. With respect to the principle that the duty to defend is broader than the duty to indemnify, it is necessary for a court to consider both the allegations and the actual claims asserted in a complaint to determine potential policy coverage which could give rise to a duty to defend.

If Red Bull and Roxy proceed to trial, there exists a possibility that Roxy could be found liable for certain claims without a showing of intentional conduct. For example, Roxy could be found liable for unfair competition in violation of Section 43(a) of the Lanham Act. If Red Bull fails to prove that Roxy's actions were intentional but does prove all the necessary elements to sustain a cause of action against Roxy for unfair competition under the Lanham Act, Roxy would still be liable for actual damages resulting from its misconduct. In turn, JRIC may have to indemnify Roxy for damages caused to Red Bull. Therefore, because the allegations contained in Red Bull's

Complaint give rise to potential coverage under JRIC's policy, JRIC is obligated to defend Roxy in the Red Bull action.[6]

**III. Duty to Indemnify**

"While the duty to defend is broad and must be determined solely by the allegations in the complaint against the insured, the duty to indemnify is more narrow and must be measured by the facts adduced at trial or developed through discovery taken during the underlying tort action." *Travelers Indem. Co. v. Royal Oaks Enterprises, Inc.*, 344 F. Supp. 2d 1358, 1366 (M.D. Fla. 2004). An insurer may be required to defend a suit even if the later facts show there is no coverage. "Because an insured's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001).

Because JRIC is obligated to defend Roxy in the underlying Red Bull action, the issue of indemnification is premature. What, if any, claims are required to be indemnified will be dependent on the outcome of the underlying Red Bull action.

**Conclusion**

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings of Defendant's Counterclaim is **GRANTED**. Defendant has a duty to defend Plaintiff in the underlying litigation.

---

6 The Court recognizes that Red Bull could recover on other claims against Roxy without having to prove intentional conduct. However, JRIC is obligated to defend the entire suit until those claims which create the potential for coverage under the policy are dismissed or removed from the action. *See Lime Tree*, 980 F.2d at 1405; *Adolfo House Dist. Corp.*, 165 F. Supp. 2d at 1336; *Baron Oil*, 470 So. 2d at 815.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on November 30, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

Unrepresented Party